Supreme Court, June, 1914.     [Vol. 86.

People ex rel. SADIE GROSS, Relator, *v*. THOMAS HAYES, as Warden of the City Prison, Defendant.

(Supreme Court, Kings Special Term, June, 1914.)

Habeas corpus — proceeding by, to determine whether judge conducting trial is a de facto judge or not — appointee of governor held to be de facto judge.

Whether a judge conducting the trial of a cause is a *de facto* judge or not may be determined in habeas corpus proceedings.

The appointee of the governor as judge of the County Court of Kings county held to be a *de facto* judge without regard to whether the constitutional amendment adopted in 1913 vested in the executive the power of immediately appointing two additional county judges, or postponed their selection until chosen by the electors in 1915.

HABEAS CORPUS proceeding.

Robert H. Elder, for relator.

Edward A. Freshman, assistant district attorney (James C. Cropsey, district attorney, and Hersey Egginton, assistant district attorney with him on the brief), for defendant.

JAYCOX, J.    The time which, under the urgent solicitation of counsel, I may devote to this matter and other matters pressing for decision renders it impossible for me to state other than in the briefest manner the reasons for the decision about to be made. The contention of the relator is that the judge before whom she was tried was neither a *de jure* nor a *de facto* judge, and that if said judge was not a *de facto* judge that that question may be raised by habeas corpus. Relator concedes the power of the governor to appoint; that the appointment of Judge Hylan is regular in form; that

he duly qualified, and that he has openly and notoriously performed the duties of county judge of Kings county. The relator, however, contends that there was no office of county judge to which he could be appointed, claiming that such office had not yet come into existence. There is a line of cases holding that there can be no *de facto* officer when there is no office to fill. *People ex rel. Sinkler* v. *Terry,* 42 Hun, 273; *Matter of Quinn,* 152 N. Y. 89; *Norton* v. *Shelby Co.,* 118 U. S. 425; *Ex parte Ward,* 173 id. 452; *U. S.* v. *Alexander,* 46 Fed. Rep. 728. With the doctrine of those cases I agree. In the last case cited above what I consider the true rule as to the limit of the inquiry upon habeas corpus is laid down as follows: " While the question of strict title to an office can be inquired into and be determined only by direct proceeding, and while courts will not, in a collateral proceeding, make such investigation, they may and will make such inquiry as will establish the line between the mere intruder into an office and one holding it under some color of title, some semblance of right — between him without authority whatever and the *de facto* officer. It has long been established that as to the public and third persons the acts of a *de facto* officer are valid, and their virtue cannot be impeached by any inquiry, in a collateral way, into the strict title to the office. This rule is establishd as a matter of public policy and necessity for the protection of the public who have dealings with officials." The right to determine in habeas corpus proceedings the question as to whether the judge conducting the trial is a *de facto* judge or not is upheld in *People ex rel. Sinkler* v. *Terry, supra,* and *Matter of Quinn, supra.* It is therefore necessary to determine only as as to the existence of the office. If the office of county judge exists, to which under some circumstances the governor may appoint, then the appointee of the gov-

ernor is a *de facto* judge, without regard to whether the circumstances exist which would make the appointment legal or not. *Terhune* v. *City of New York* 88 N. Y. 247. The County Court of Kings county is duly established, and it is the court which has jurisdiction of the offense and not the judge. Prior to the amendment to the Constitution which gives rise to this question the Constitution provided for two judges of that court in Kings county. That brings the present case directly in line with *Curtin* v. *Barton,* 139 N. Y. 505, where the court speaking through O'Brien, J., said: '' The judges were in fact appointed by the governor, were in possession of the office engaged in discharging the duties under color of such appointment. They were, therefore, officers *de facto,* discharging judicial duties under color of legal title, and such title can be questioned only by the state under whose authority they were invested with the character at least of *de facto* officers. This principle is founded on considerations of public policy, and its maintenance is essential to the preservation of order, the security of private rights and the due enforcement of the laws. Moreover, it is sanctioned by abundant authority (*Carpenter* v. *People,* 64 N. Y. 493; *State* v. *Carroll,* 38 Conn. 449; *Reed* v. *Buffalo,* 3 Keyes, 447; *People* v. *Petrea,* 30 Hun, 110).   *   *   * When a court with competent jurisdiction is duly established, a suitor who resorts to it for the administration of justice and the protection of private rights should not be defeated or embarrassed by questions relating to the title of the judge, who presides in the court, to his office. If the court exists under the Constitution and laws and it had jurisdiction of the case, any defect in the election or mode of appointing the judge is not available to litigants.'' See, also, *Trounstine* v. *Britt,* N. Y. L. J., June 4, 1914. I therefore am of the opinion that John R. Hylan was a *de facto* county

judge of Kings county without regard to whether the constitutional amendment adopted in 1913 vested in the governor the power of immediately appointing two additional county judges or postponed their selection until chosen by the electors in 1915. Writ dismissed and relator remanded.

Writ dismissed.