OPINION OF THE COURT
Herbert A. Posner, J.
When it comes to establishing standards and administrative policies for the New York State judicial system, there is no higher authority than the Administrative Board of the Unified Court System (NY Const, art VI, § 28 [c]). However, when it comes to interpreting a Federal statute, the Administrative Board is not the highest authority — that role is reserved for the United States Supreme Court (US Const, art III, § 2 [1]).
On June 20, 1991, the United States Supreme Court decided that the Federal Age Discrimination in Employment Act (ADEA) does not apply to appointed State Judges. (Gregory v Ashcroft, 501 US —, 115 L Ed 2d 410.) On June 24th, the Honorable Allen Beldock (Beldock) and the Honorable Anthony P. Savarese (Savarese), Acting Supreme Court Justices assigned to Criminal Parts in Queens County, were orally notified by the Administrative Judge of Queens County that they were being relieved of their judicial duties and would be taken off the judicial payroll as of July 31, 1991. They were asked to finalize any completed matters within the six weeks allotted. In response, they have both commenced actions for a declaratory judgment seeking to extend their tenure on the Bench and are seeking a preliminary injunction against the defendants enjoining their removal from office. The defendant, Matthew Crosson (Crosson), Chief Administrator of the Unified Court System, has cross-moved for summary judgment dismissing both actions. Though the two Judges are asking for different forms of relief, the court’s final result will apply equally to the two cases; therefore, this will be a joint decision.
Beldock and Savarese were appointed as Criminal Court Judges by the Mayor of the City of New York. Beldock’s term was to expire on December 31, 1998 and Savarese’s on December 31, 1992. However, the New York State Constitution mandates the retirement of Judges at the end of the year in which they reach the age of 70, and both of these Judges became 70 years of age several years ago. Their tenure was *182 extended in 1987 by the Chief Administrator of the Courts (at that time, the Honorable Albert M. Rosenblatt), based on an opinion of the Administrative Board of the Courts "that those judges who were appointed to judicial office — Judges of the Court of Appeals, Court of Claims, New York City Family Court and New York City Criminal Court — may remain in office after the age of 70 until the completion of their terms, notwithstanding the state constitutional proscription to the contrary.” (Unified Court System memo dated May 26, 1987.) This opinion is based on the ADEA statute which made it unlawful for an employer, including a State or political subdivision of a State, to discharge an individual over 40 years of age "because of such individual’s age”. (29 USC § 623 [a]; § 631 [a].)
In defining the term "employee,” the ADEA specifically excludes "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer’s personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.” (29 USC § 630 [f].) The United States Supreme Court decided in Gregory v Ashcroft (501 US, supra, at —, 115 L Ed 2d, supra, at 428) that because of the exclusion of "an 'appointee on the policymaking level’ ”, the ADEA does not apply to appointed State Judges. This determination is in direct conflict with the May 26, 1987 memo by the Chief Administrator of the Courts, pursuant to which Beldock and Savarese (and other appointed New York State Judges) had been permitted to remain on the Bench past the age of 70.
Justice Rosenblatt’s memo (addressed to all Judges and Justices of the Unified Court System) stated, in pertinent part: "It is the opinion of the Administrative Board of the Courts (which consists of Chief Judge Sol Wachtler, and Presiding Justices Francis T. Murphy, Milton Mollen, A. Franklin Mahoney and Michael F. Dillon), that those judges who are appointed to judicial office — judges of the Court of Appeals, Court of Claims, New York City Family Court and New York City Criminal Court — may remain in office after the age of 70 until the completion of their terms notwithstanding the state constitutional proscription to the contrary. While the ADEA lists three categories of exemptions to its protections — 'appointees of elected officials’, 'bona fide executives’ and 'high policymakers’, it is the Board’s opinion that New York’s appointed *183 judges do not fall within those categories, nor do appointed judges who also exercise administrative authority fall within those categories.”[1]
Gregory v Ashcroft (supra) involved a Missouri constitutional provision which also provided a mandatory retirement age of 70 years for all Missouri State Judges. The petitioners were two appointed Judges, subject to the provision, who filed a suit alleging that the respondent, the Governor of Missouri (John D. Ashcroft), had violated the ADEA by refusing to allow them to sit on the Bench after they became 70 years of age. The five-Justice majority, in an opinion delivered by Justice O’Connor, concluded that a State constitutional provision which establishes a qualification for Judges "is a decision of the most fundamental sort for a sovereign entity” and that congressional interference in this area "would upset the usual constitutional balance of federal and state powers.” (Gregory v Ashcroft, 501 US —, —, 115 L Ed 2d 410, 423, supra.) Therefore, a plain statement rule was followed, requiring Congress to make its intention " ' "clear and manifest” if it intends to pre-empt the historic powers of the States’ ”. (Supra, 501 US, at —, 115 L Ed 2d, at 424, quoting Will v Michigan Dept. of State Police, 491 US 58, 65 [1989].) Applying this rule to the ADEA exclusion, the majority reasoned that:
"The statute refers to appointees 'on the policymaking level,’ not to appointees 'who make policy.’ It may be sufficient that the appointee is in a position requiring the exercise of discretion concerning issues of public importance. This certainly describes the bench, regardless of whether judges might be considered policymakers in the same sense as the executive or legislature.
"Nonetheless, 'appointee at the policymaking level,’ particularly in the context of the other exceptions that surround it, is an odd way for Congress to exclude judges; a plain statement that judges are not 'employees’ would seem the most efficient phrasing. But in this case we are not looking for a plain *184 statement that judges are excluded. We will not read the ADEA to cover state judges unless Congress has made it clear that judges are included. This does not mean that the Act must mention judges explicitly, though it does not. Cf. Dellmuth v Muth, 491 US 223, 233 (Scalia, J., concurring). Rather, it must be plain to anyone reading the Act that it covers judges. In the context of a statute that plainly excludes most important state public officials, 'appointee on the policymaking level’ is sufficiently broad that we cannot conclude that the statute plainly covers appointed judges. Therefore, it does not.” (Supra, 501 US, at —, 115 L Ed 2d, at 427-428.)
Justice White, in a separate opinion with which Justice Stevens concurred, took issue with the "plain statement” requirement imposed upon Congress by the majority, as being both improper and unnecessary. Nevertheless, the concurring Justices agreed with the majority that appointed Judges are excluded from the ADEA because they found that "the decisionmaking engaged in by common-law judges, such as petitioners, places them 'on the policymaking level.’ ” (Supra, 501 US, at —, 115 L Ed 2d, at 438.) The concurring Justices also agreed with the majority that the Missouri Constitution’s mandatory retirement provision did not violate the Equal Protection Clause of the Fourteenth Amendment of the US Constitution since there was a rational basis for the age classification.
The decision of the United States Supreme Court in Gregory v Ashcroft (supra) clearly establishes that the plaintiffs, Beldock and Savarese, are excluded from the protection of the ADEA. Therefore, in order to prevail in this action, they must demonstrate that they are entitled to remain in office on some other basis.
Judge Savarese relies on the fact that the New York State Constitution mandates retirement at the end of the year in which the Judge reaches the age of 70. He argues that since the decision mandating his retirement was rendered in June of this year, he is not required to retire until the end of the year and his removal from judicial office should be enjoined until that time. This argument must be rejected since the New York State Constitution required Savarese to retire in December of the year in which he reached the age of 70, and this occurred several years ago. To permit him to remain in office after the United States Supreme Court has ruled that *185 this State constitutional provision is enforceable would be a violation of the State’s Constitution, which would impugn the validity of any judicial acts undertaken by him. Therefore, his removal from the Bench was necessary and proper. (Cf., Sylvia Lake Co. v Northern Ore Co., 242 NY 144.)
Beldock, who seeks to extend his tenure until the expiration of his appointed term in 1998, contends that in Gregory v Ashcroft (supra) the United States Supreme Court deferred to a State’s right to decide whether its jurists are appointees on a "policymaking level.” Relying on the May 26, 1987 memo, he argues that New York, unlike Missouri, had determined that its appointed Judges are entitled to the protection of the ADEA since they are not on the "policymaking level,” and cannot now usurp the authority of the Administrative Board and order his removal from office.
While the majority opinion in the Gregory case (supra) acknowledges the State’s authority (through its Constitution) to determine the qualifications of its Judges, it does not leave to each State’s bureaucracy the determination of whether appointed Judges are excluded from the coverage of the ADEA. The argument advanced by Beldock therefore proceeds on an erroneous premise. Gregory v Ashcroft stands for the proposition that appointed State Judges are excluded from the protection of the ADEA. The 1987 memo, based upon an opinion of the Administrative Board of the New York Courts that its appointed State Judges were not excluded, was just that — an opinion — not a ruling. Even if the Administrative Board had issued a ruling on the subject in 1987, the last word rests with the United States Supreme Court. The ruling as to the applicability of the Federal statute has now been made by the United States Supreme Court.
The New York State Office of Court Administration did not usurp the authority of the Administrative Board in notifying Beldock and Savarese that, in view of the Ashcroft decision (supra), they were being relieved of their duties, and would be retired as of July 31, 1991. The enforcement of mandatory retirement, unlike the assignment of Judges in Matter of Morgenthau v Cooke (56 NY2d 24), did not involve the establishment of standards and administrative policies; and, therefore, it was within the powers and duties of the Chief Administrator of the Courts.
Accordingly, the motions by the defendants in each action *186 for summary judgment are granted and the complaints in both actions are dismissed.[2]

. The court can understand how the Administrative Board found that Court of Claims and New York City Family and Criminal Court Judges were not on a "policymaking level.” (See, Gregory v Ashcroft, 501 US —, —, 115 L Ed 2d 410, 440 [Blackmun, J., and Marshall, J., dissenting].) However, it is a mystery as to how the Court of Appeals is also considered as not on a "policymaking level.” (See, Justice Hooper’s decision in People v Keta, 165 AD2d 172, 177 [wherein Justice Hooper discusses the "policy and rule-making function traditionally perceived as the exclusive domain of the Court of Appeals”].)

. The court system is losing two able and experienced Judges. Combined, they have approximately 40 years of judiciary experience in criminal law. At a time when the criminal case load is at an extraordinary high level, their experience and ability is irreplaceable. Perhaps it is time to consider amending the State Constitution regarding mandatory retirement at age 70.