*916 OPINION OF THE COURT
Mark Dwyer, J.
Defendant Ramos has been indicted for conspiracy in the first degree, criminal sale of a controlled substance in the third degree, and six related offenses. Originally, 41 other defendants were charged with this defendant in a 92-count indictment. At this point, charges remain pending against four codefendants.[1]
Defendant and those four codefendants were on the eve of trial when the Appellate Division, Second Department, decided People v Del Col (88 AD3d 737 [2d Dept 2011] [appeal pending]). In Del Col the court ruled that a “Special Assistant District Attorney” in Nassau County had not been appointed properly, and that an indictment he obtained against Del Col and a codefendant therefore would be dismissed. Defendant then moved to dismiss the charges against him on the theory that at least one “Special Assistant District Attorney” appointed in the same manner appeared in the grand jury that returned the indictment in this case. On December 9, 2011, this court advised the parties that defendant’s motion was denied. This opinion follows, in explanation of the decision.
A
Defendant was one of 42 individuals charged with participating in a conspiracy to sell cocaine in many different Brooklyn neighborhoods. The leader of the conspiracy was Erik Rodriguez, who has pleaded guilty. Rodriguez set up an organization that took telephone orders for cocaine and used cell phones to dispatch cars to deliver the merchandise to customers.
The grand jury that indicted Rodriguez, defendant, and their codefendants heard evidence on 28 days over a period of seven months. Twelve Assistant District Attorneys appeared in the grand jury. Two of them were “Special Assistant District Attorneys” (hereafter, Special ADAs). One or both of these Special ADAs were observers in the grand jury on eight days. On three more days, both Special ADAs presented testimony to the grand jury concerning a codefendant, Yotuhel Montane. On one other *917 day, September 15, 2009, one of the Special ADAs submitted 17 charges to the grand jury. Three of the charges concerned a criminal transaction in which defendant participated, and the presentation of those charges caused the grand jury to return indictment counts 33, 34, and 35 against defendant and others.
In an affirmation not disputed by the defense, the People have stated that
“all decisions as to the evidence to be presented to the grand jury and the charges to be submitted to the grand jury were made by Assistant District Attorney Suzanne Corhan, who was then the Deputy District Attorney, Chief of the Major Narcotics Investigations Bureau, and Assistant District Attorney Lawrence Oh, who was then the Bureau Chief of the Major Narcotics Investigations Bureau.”
On the dates on which the Special ADAs introduced evidence, Mr. Oh and two other assistant district attorneys were present in the grand jury. On September 15, 2009, when a Special ADA submitted charges to the grand jury, Mr. Oh and three other assistant district attorneys were present.
B
On October 4, 2011, the Appellate Division, Second Department, handed down its decision in People v Del Col. In that case a County Court judge in Nassau County had dismissed an indictment charging two defendants with grand larceny in the second degree. The Second Department affirmed the dismissal. The substantive portion of the opinion is quoted here in toto (88 AD3d at 738):
“By indictment dated February 4, 2010, the defendants were each charged with one count of grand larceny in the second degree. The prosecutor who presented the charges to the grand jury, a former Assistant District Attorney who had gone into private practice, had been appointed by the District Attorney as a ‘Special Assistant District Attorney’ in January 2010, as indicated by a ‘constitutional oath of office’ card filed with the County Clerk. The defendants moved to dismiss the indictment on the ground that, among other things, the District Attorney lacked the authority to appoint the prosecutor who presented the subject charges to the grand jury.
“Under the circumstances of this case, the County *918 Court properly determined that the District Attorney lacked the authority to appoint the prosecutor who presented the subject charges to the grand jury (see County Law § 701 [1]; § 702 [1], [2]; see also Matter of Schumer v Holtzman, 60 NY2d 46, 53-54 [1983]; Matter of Sedore v Epstein, 56 AD3d 60, 63 [2008]).
“Moreover, ‘the crucial nature of the prosecutor’s role vis-á-vis the Grand Jury, particularly in view of his discretionary authority, mandates a finding that prejudice to the defendant is likely to result from the presence of an unauthorized prosecutor before the Grand Jury’ (People v Di Falco, 44 NY2d 482, 485, 488 [1978]). Here, the County Court did not err in determining that dismissal of the indictment was warranted on the ground that the District Attorney lacked the authority to appoint the prosecutor who presented the charges to the grand jury (id. at 488; People v Fox, 253 AD2d 192 [1999]).” (Emphasis added.)
This language now provides the underpinning for defendant’s motion to dismiss. In this case, two prosecutors who appeared in the grand jury were Special ADAs. Like the prosecutor in Del Col, they were not appointed to their positions by a superior court as “Special District Attorneys” must be. (See County Law § 701.) They instead were appointed by the District Attorney, and their “oath of office” cards were filed with the county clerk. The Del Col decision may be reviewed in the Court of Appeals. In the meantime, this court will of course assume that Del Col was correctly decided, and will be obliged to follow its holding if that holding is applicable here.
C
The district attorney of a county is a state constitutional officer elected by the people. Of course, no one expects the 62 elected district attorneys personally to prosecute all the criminal cases in the state. Under the County Law, provision is made for district attorneys to appoint assistant district attorneys, and some counties employ many hundreds of assistant district attorneys. The appointment of assistant district attorneys “shall be in a writing filed and recorded in the office of the county clerk. The person appointed shall take the prescribed oath of office . . . .” (County Law § 702 [1].)
In large offices, these assistant district attorneys are frequently given titles that indicate their status in that particular *919 office. For example, some are called deputy assistant district attorneys, chief assistant district attorneys, administrative assistant district attorneys, or special ADAs. Different district attorneys employ these titles in different ways. In this court’s experience, most (but not all) “Special” ADAs are volunteers whose appointments are understood to be for a limited time, and perhaps to involve work on a single case — often an appellate case.[2]
On occasion, a district attorney cannot represent the People in a particular case. In those cases a superior court may appoint, as a substitute, a special district attorney. (See County Law § 701.) The special district attorney will prosecute the case entirely independently of the county’s district attorney. The district attorney may not cede his authority to another who has not been appointed as specified in section 701. (See Matter of Schumer v Holtzman, 60 NY2d 46 [1983].) Obviously, assistant district attorneys — even those who happen to be called “Special” — are not the same as special district attorneys. The former operate under the supervision of the county’s district attorney, and the latter do not. Special district attorneys answer to no one but the court. Put another way, a Special ADA works for the district attorney. A special district attorney replaces the district attorney.
The appellate courts have always understood this distinction. In Holtzman, for example, the Court of Appeals recognized that a district attorney could not relieve herself from the duty to supervise an assistant district attorney — one who was not appointed by a court to be a special district attorney. But the appellate courts have also routinely understood that assistant district attorneys who happen to be titled “Special” ADAs are not, because of the “Special” in their title, somehow disqualified from serving like other assistant district attorneys appointed pursuant to County Law § 702. (See e.g. People v Dunbar, 53 NY2d 868 [1981]; People v Anderson, 237 AD2d 989 [4th Dept 1997].)
D
The Del Col court found that a particular prosecutor should be deemed a special district attorney with a proper appointment *920 only if he had. beén appointed by a superior court in the manner specified in County Law § 701. The court twice noted that its decision was based on the facts of the case. The court did not in any way rule that every Special ADA must be appointed in the manner prescribed for special district attorneys. The court did not indicate which facts it found significant to distinguish the Del Col prosecutor from others but review of the parties’ briefs suggests what the court had in mind.
First, the subject matter of the Nassau County case was highly technical. Del Col, an attorney, was charged along with another with attempted extortion from Data Treasury Corporation. The codefendant, who was Del Col’s client, was scheduled to testify in a civil suit between the corporation and Wells Fargo relating to the use of technology patented by the corporation. The People’s theory was that the defendant told the corporation that the codefendant’s testimony would be favorable or unfavorable, depending on whether the corporation paid them off. The Special ADA in Del Col was selected because of his particular technical expertise, developed during past service in the District Attorney’s Technology Crimes Unit. His special knowledge would naturally make his decisions difficult to “supervise.”
Second, the Special ADA had left the District Attorney’s Office and become a private defense attorney in Nassau County, obviously maintaining a practice independent of the District Attorney. He was appointed a Special ADA for one case only, the Del Col case, and he received no pay for his work. His appointment would apparently terminate with the end of the prosecution, however quickly that might come.
Third, the defense made allegations which, though not found to be true or false, may have colored the Appellate Division’s views. Del Col alleged that the prosecution was politically motivated in that interested parties had contributed to the District Attorney’s campaign fund. Del Col also asserted that the Special ADA had originally claimed that he was a special prosecutor and thus completely in charge of the case.
Those circumstances seem to have combined to cause the Appellate Division to determine in Del Col that the prosecutor was sufficiently independent, and the District Attorney’s position sufficiently conflicted, that the prosecutor was actually the functional equivalent of a Special District Attorney — one who could not serve without court sanction for his appointment. But the facts here do not remotely resemble those of Del Col. Here, for example, the two Special ADAs were not appointed to work *921 on a particular case. They were not unpaid and apparently were full-time employees. When working on defendant’s case, they were carefully supervised. The case required no special technological expertise that might have made supervision difficult — and indeed, all the pertinent expertise lay with the supervisors of the Special ADAs. In this case there have been no allegations about politics, campaign contributions, or corrupt influence. It might be added that here there are two Special ADAs, neither of whom has been said to “outrank” the other. That circumstance hardly suggests that a special district attorney was put in charge of the prosecution.
The two Special ADAs in this case were working in the same manner as their fellow assistant district attorneys. They were supervised. They were appointed in routine fashion and the normal paperwork was submitted to the county clerk. They took the requisite oath of office. In all particulars they were assistant district attorneys properly appointed pursuant to County Law § 702. The fact that they are called “Special” ADAs does not matter. They did not have to be appointed and approved by a superior court to replace the district attorney; they work for him.
A final note: at no point during the proceedings under this indictment has any defendant made a claim that this case is, like Del Col, different from the routine case. There simply is no basis to treat the two Special ADAs here as special district attorneys.
E
The People have made two arguments which this court does not endorse, and it remains to explain that circumstance. First, the People assert that the two Special ADAs and the prosecutor in Del Col were “de facto officers.” As a result, the People say, the actions of those prosecutors cannot be challenged by defendants in criminal cases even if the prosecutors were not properly appointed. That proposition was not presented to the Second Department or discussed by the court in Del Col, and the People suggest that this court is therefore free to base its ruling upon it. Unfortunately for the People, the de facto officer argument simply begs the question.
The “de facto officer” doctrine has long been recognized by the New York appellate courts. If a court or an office enjoys jurisdiction in a particular matter, a litigant has no standing to complain about an irregularity in the appointment of, or about *922 an irregularity as to the qualifications of, a particular individual in the court or office. Thus, for example, if the county’s supreme court has jurisdiction over a case, a litigant cannot complain that a particular judge was assigned to the court through an illegal procedure, or that the judge lacks a necessary qualification of his office. (See e.g. Matter of Morgenthau v Cooke, 56 NY2d 24 [1982]; Curtin v Barton, 139 NY 505 [1893]; People v Campos, 239 AD2d 185 [1st Dept 1997]; People ex rel. Devine v Scully, 110 AD2d 733 [2d Dept 1985].) Similarly, if a prosecutorial office has jurisdiction to prosecute, a defendant may not complain that an individual attorney working in that office, or even the head prosecutor in the office, failed to comply with rules governing selection and qualifications. (See e.g. People v Carter, 77 NY2d 95 [1990]; People v Dunbar, 53 NY2d 868 [1981]; People v Pizzaro, 146 Misc 2d 527 [Sup Ct, NY County 1990].) It is enough that the entity has jurisdiction, even if a personnel decision was flawed. On the other hand, if the prosecution office qua office (or a grand jury) lacks jurisdiction over a case, the “de facto” principle will not apply; indictments obtained by or from these entities are subject to dismissal. (See e.g. People v Sayavong, 83 NY2d 702 [1994]; People v Williams, 73 NY2d 84 [1989]; People v Di Falco, 44 NY2d 482, 485-486 [1978]; People v Fox, 253 AD2d 192 [3d Dept 1999].)
In this case, if the two Special ADAs were actually special district attorneys independent of the elected district attorney like the prosecutor in Del Col, then they were a prosecution “office” with no jurisdiction. Since a purported special district attorney considered as a prosecution entity lacks power over a case if he was not selected by a judge, the “de facto” officer rule would not help the People. (Compare Matter of Schumer v Holtzman, 60 NY2d 46 [1983], with Matter of Haggerty v Himelein, 89 NY2d 431 [1997].) On the other hand, if the Special ADAs are instead merely employees of the elected district attorney with a “Special” title, the de facto officer rule might apply — but there would then be no irregularity which would require invocation of the doctrine in the first place. Thus, the People’s de facto officer analysis simply fails to advance their position on the controlling issue.
Second, the People assert that the participation of the two Special ADAs in the grand jury that returned the indictment was so minor that defendant suffered no prejudice. But the claim that the indictment can stand for that reason is ultimately as unhelpful as the de facto officer argument, for similar *923 reasons. If a prosecution office that is without jurisdiction participates in a grand jury presentation, the indictment must be dismissed if there is even the possibility of prejudice. (See People v Sayavong, 83 NY2d 702 [1994]; People v Di Falco, 44 NY2d 482 [1978]; People v Fox, 253 AD2d 192 [1999].) And that low standard is plainly satisfied by the unauthorized presentation of proof or charges by the inappropriate office, given that the prosecutor effectively serves as the director of the grand jury proceedings. As the Court of Appeals held in Di Falco, the prosecutor’s role in the grand jury is crucial, particularly in view of his discretionary authority. (Di Falco, 44 NY2d at 486-488.) For practical purposes, the “possibility” of prejudice always exists when an unauthorized prosecutor conducts proceedings in the grand jury. If the Special ADAs in this case were an independent and improper prosecution “office,” their appearance in the grand jury must be deemed prejudicial. On the other hand, if the Special ADAs in this case worked for the district attorney, their presence was proper without regard to questions of prejudice. The People’s “prejudice” argument therefore does not change anything.
The court concludes that the two Special ADAs in this case acted as assistant district attorneys, and were not independent special district attorneys. Defendant’s motion to dismiss is therefore denied.

. Those four codefendants are Alex DeJesus, Gilbert Gonzalez, George Marcial, and Edwin Pedroza. This court’s understanding is that all four join in defendant’s motion. The court will apply this opinion and order as to those four codefendants, who for this purpose are as a practical matter identically situated with defendant Ramos. Defendant Ramos himself pleaded guilty after the court announced its decision on his motion, but of course before this opinion issued.

. County Law § 702-a provides for the appointment of “Special Assistant District Attorneys” who will serve without compensation in times of civil disorder. The Special ADAs who serve at this time are of course not appointed pursuant to this section.